**FORD, BACON & DAVIS, INCORPORATED, Appellant,**

v.

**M. A. HOLAHAN, Trustee, Appellee.**

**No. 19896.**

United States Court of Appeals
Fifth Circuit.

Dec. 27, 1962.

Rehearing Denied Feb. 28, 1963.

Gibbons Burke, New Orleans, La., for appellant.

Paul J. Thriffiley, Jr., New Orleans, La., for appellee.

Before HUTCHESON, CAMERON and JONES, Circuit Judges.

HUTCHESON, Circuit Judge.

This is an appeal from a judgment for $10,456.59 in favor of Holahan, trustee in bankruptcy of Gulf Securities of Louisiana, Inc. That amount had been paid by the bankrupt, Gulf, to appellant, and the principal issue on appeal is whether the trustee was vested with title to the funds from which that payment was made, prior to the payment, under section 70 of the Bankruptcy Act, 11 U.S.C. Sec. 110.[1]

Gulf's business was the promotion of revenue bond issues of political units; as part of that business, Gulf rendered various fiscal and engineering services to bond-issuing political units. Paris-Henry County Public Utility District of Henry County, Tennessee, contemplated a bond issue to finance the county's gas distribution project. It entered into a contract with Gulf's predecessor to perform various fiscal and engineering services in connection with that contemplated bond issue. On May 23, 1957, the contract was assigned to Gulf, with Utility District's Agreement.

On August 16, 1957, a petition was filed to have Gulf adjudicated an involuntary bankrupt. On October 25, 1957, appellant [2] was hired to prepare an engineering feasibility report of the gas distribution project. On April 18, 1958, appellant, having completed the study and report, delivered copies of the report to the underwriters; on May 12, 1958, it delivered copies of the report to the county. On July 10, 1958, Gulf was adjudicated a bankrupt. On July 11, 1958, the underwriters purchased the bond issue and paid the county. The county then paid Gulf $48,825 as its fee; Gulf, in turn, paid appellant its fee of $10,456.59, which amount is the subject of this suit.

Appellant contends that Gulf's rights under its contract with the county did not vest in the trustee; as the payment from Gulf to appellant was made from the proceeds of that contract, the trustee is not entitled to recover the amount so paid. This contention is based upon two subsidiary arguments; first that the contract was a "personal services" contract and, secondly, that it was executory on the date of "bankruptcy", which, appellant argues, is the date that the petition was filed. While admitting that the contract was executory on the date that the petition was filed, the trustee contends that the contract was not one for "personal services", and, alternatively, that the "bankruptcy" date was the date of adjudication, by which date the contract had been performed by Gulf.

■ The general proposition is that the interest of a bankrupt in a contract for personal services, which is executory on the date of bankruptcy, does not vest in the trustee. 4 Collier on Bankruptcy Sec. 70[3] (14th ed. 1962). We agree with appellant that the date of "bankruptcy" is the date on which the petition is filed, so that the determination of what property vests in the trustee is made as of that date. The bankruptcy title provides that "date of bankruptcy", "time of bankruptcy", "commencement of bankruptcy", or "bankruptcy", with reference to time, shall mean the date when the petition was filed.[3]

■ Section 70(a) explicitly provides that the trustee shall be "vested by operation of law with the title of the bankrupt *as of the date of the filing of the*

1. In pertinent part, Sec. 70 provides as follows:
    "(a) The trustee of the estate of a bankrupt * * * upon his * * * appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title * * * to all of the following kinds of property wherever located * * *; (5) property, including rights of action, which prior to

the filing of the petition, he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered * * *." 11 U.S.C. Sec. 110.

2. At all relevant times, appellant, its officers and agents, were without knowledge of the pendency of the bankrupt action against Gulf.

3. Section 1(13), 11 U.S.C. Sec. 1(13).

*petition.* \* \* \* " (emphasis added). The statutory language could be no clearer. The line of cleavage is marked as of the date on which the petition was filed, and, to determine what property vests in the trustee, we look at the circumstances as they existed on that date. Goggin v. Division of Labor Law Enforcement, 1949, 336 U.S. 118, 124–126, 69 S.Ct. 469, 93 L.Ed. 543; Everett v. Judson, 1913, 228 U.S. 474, 479, 33 S.Ct. 568, 57 L.Ed. 927.[4]

Appellee contends, however, that the date of the filing of the petition is the critical date only in situations of voluntary bankruptcy, but where, as here, the situation is one of involuntary bankruptcy, the critical date is that of the adjudication, at which time the contract between Gulf and the county was no longer executory. In support of that distinction, he advances the argument that Sec. 70(a) is modified by Section 70(b).[5] Under the latter section, the trustee is given sixty days from the date of *adjudication* within which to accept or reject executory contracts of the bankrupt. Inasmuch as the date of adjudication is, by operation of law, the date on which the petition was filed in situations of voluntary bankruptcy,[6] Sec. 70(b), insofar as it makes the date of adjudication the beginning of the time period within which the trustee is to act, is meaningful only in situations of involuntary bankruptcy. But it does not follow that the section was intended to make the date of adjudication the "bankruptcy" date in situations of involuntary bankruptcy. Section 70(b) goes no farther than to provide a method by which the trustee can relieve the estate of obligations believed to be onerous to it. See 4 Collier on Bankruptcy, Sec. 70.42 [1] (14th ed. 1962). The section does not purport to determine the date of *vesting;* it pertains only to the course of action to be followed by the trustee, and the applicable time limits for that action, in regard to executory contracts which have vested in him under, and on the date provided in, Sec. 70(a). The district judge therefore erred in holding, as he apparently did,[7] that the critical date in this case was the date of adjudication.

The contract between Gulf and the county was executory on the date that the petition was filed. If, as appellant argues, the contract was one for "personal services", it therefore did not vest in the trustee. The question is, under the facts of the case, a close one,[8] but we are of the opinion, and hold, that the contract between Gulf and the county was one for "personal services".[9] While it is true, as the trustee points out, that

4. See generally 6 Am.Jur. Sec. 859 (Rev. ed. 1950); 4 Collier on Bankruptcy Sec. 70.05 (14th ed. 1962); 8 C.J.S. Bankruptcy § 200 (1962 ed.).

5. 11 U.S.C. Sec. 110(b). In pertinent part, section 70(b) provides as follows: "Within sixty days after the adjudication, the trustee shall assume or reject any executory contract, \* \* \*. Any such contract or lease not assumed or rejected within such time, whether or not a trustee has been appointed or has qualified, shall be deemed to be rejected. \* \* \* " 11 U.S.C. Sec. 110(b).

6. Section 18(f), 11 U.S.C. Sec. 41(f).

7. On appellant's motion for rehearing, the trial judge stated, "The personal service exception is the legal recognition of the unique personal relationship between the parties in certain contract situations. Because of this relationship (personal service), it would be unfair to allow the substitution of a trustee in bankruptcy for one of the parties in this personal relationship. However, since the contract here has been executed, the rationale and thus the necessity for the exception is no longer present."

8. It has been observed that, "Whether or not a contract involves personal skill, trust or confidence sometimes involves close distinctions, depending upon the nature of the subject of the contract, the circumstances of the case and the intention of the parties." 4 Collier on Bankruptcy Sec. 70.22 [3] (14th ed. 1962).

9. The trial judge's opinion on rehearing appears to indicate that he was of the opinion that it was such a contract. Supra, note 8. In stating his reasons for his decision in favor of appellee, he stated merely that, "The funds received by Gulf from Utility District do not come within the exception afforded personal contracts and the balance due Gulf from

most of the contracts falling within the "personal services" exception are employment contracts of individuals,[10] it does not follow that a corporation cannot enter into such a contract. In re D. H. McBride & Co., S.D.N.Y.1904, 132 F. 285, 288. The important inquiry is into the nature of the contract itself, to determine if it calls for the exercise of some personal skill and judgment on the part of the bankrupt, or rests upon the other party's placing trust and confidence in the reputation of the bankrupt for skill and integrity.

In the present case, the contract between Gulf and the county called for Gulf to prepare engineering reports on the project for which the bonds were to be issued. It was also called upon to provide financial services, acting as fiscal agent, and legal advice and services, including preparation for the intervention and presentation to the Federal Power Commission. Upon the quality of its service and advice the success of the bond issue would largely depend. Further, Gulf was to act directly with the underwriters, representing the county. Those services were not merely mechanical, capable of successful completion by someone picked at random, or necessarily by other firms engaged in the same type of business. We conclude that the county, in engaging Gulf to perform those services, necessarily relied upon Gulf's reputation. It placed confidence in Gulf's reputation for skill. That the county did not know who would be employed by Gulf to carry out the particular services is not conclusive against appellant's position as appellee argues. To the extent that Gulf

had a reputation for skill and integrity, that reputation would be partially based upon the past performance of its employees, so that one could rely upon Gulf's skill in *selecting* employees.

The trustee, however, seeks to uphold the judgment below on the theory that appellant has a provable claim against Gulf's estate under Sec. 63(b)[11] of the Act, so that it should not be allowed to retain the funds paid to it. In order for a claim to be allowed under that section, it must be based upon a benefit furnished to the estate. Since a "personal services" contract does not vest in the trustee, services performed under it would appear not to be "for the benefit of the estate", but, rather for the personal benefit of the bankrupt, with the result that appellant does not have a provable claim under Sec. 63(b). The result of that interpretation, appellee contends, is that other creditors of Gulf by virtue of that contract have no provable claim against the estate. The rights of such creditors are not here in issue, and we make no holding as to their rights.

The contract between Gulf and the county was one for personal services. It was executory on the day that the petition was filed, which is the date of bankruptcy. The contract, therefore did not vest in the trustee, and part of Gulf's subsequent proceeds from the contract could be transferred to appellant, as appellant has shown was done.

The judgment of the district court must be, and hereby is, reversed, with directions to enter judgment in favor of the appellant.

---

Utility District is a chose in action which passes to the trustee".

10. E.g., In Re Miller, 6th Cir., 1939, 101 F.2d 323, 324; Florance v. Kresge, 4th Cir., 1938, 93 F.2d 784, 786–787; Villar & Co. v. Conde, 1st Cir. 1929, 30 F.2d 588, 590.

11. 11 U.S.C. Sec. 103(b). In pertinent part, that section provides as follows:
"In the interval after the filing of an involuntary petition and before the appointment of a receiver or adjudication, whichever first occurs, a claim arising in favor of a creditor by reason of property transferred or services rendered by the creditor to the bankrupt *for the benefit of the estate* * * *." (emphasis added)